WeldoN, J.,
delivered the opinion of the court:
This case presents substantially the same facts as shown in the case of Joseph F. Herring v. The United States and the Ute Indians (32 C. Cls. R., 536). That case was decided adversely to the claimant on the ground that Black Hawk’s band of Indians were not in amity at the time of the alleged depredation.
The amount not being sufficient to justify an appeal, this case, having a claim for more than $3,000, is prosecuted for the purpose of reconsidering the judgment in the case of Herring.
In order to change the judgment of the court, upon the question of amitjr of the Black Hawk band of Indians at the time of the alleged depredations, the claimant has produced several affidavits of persons living in the country in which the depredations of Black Hawk were committed, and more or less conversant with what happened during the time coyered by the time of the depredations of Black Hawk.
The defendants have agreed that such-affidavits may be considered upon the question of amity as having the force of depositions; and upon the faith of that agreement the court has considered the legal effect of those affidavits as tending to contradict a condition of a want of amity, which was found by the court in the Herring case.
Giving the testimony of the witness due consideration with *287 referenco to the condition of the Indians at the time of an alleged depredation, it is sufficient to say that the testimonj? of the witnesses does not change the conclusion of the court upon the question of whether at the time of the alleged depredations Black Hawk was in a state of amity with the United States.
The question of whether Black Hawk was the leader of a band within the meaning of the first section of the act conferring jurisdiction oh this court to adjudicate claims arising from Indian depredations was settled bjr the decision in the Herring case. It is said in substance in that case that a band, being the lowest and smallest subdivision, confederates more readily than any other form of corporate existence, so to speak, and may be composed of Indians of different tribes or nations, and becomes a de facto band by the extent of its membership, its continuity of existence, and its persistent cohesion, subject to the control and power of a leader having the recognized authority of a commander and chief.
The different divisions of the Indians have not usually originated from the conventional mode which organizes white persons into political communities, but have originated as a •condition in fact, and when so existing they are recognized by the laws and treaties as. a separate entity and held responsible as such.
The legal effect of the new evidence not having changed the condition of the relations existing between this band of Indians and the United States, as found in the Herring case, we must hold, as we did in that case, that there is no liability?- on the part of the United States, and that the claimant is not entitled to recover.
The suit in this case is against the Ute Indians generally, but the proof shows that the depredations complained of were committed bj? a band under the leadership of Black Hawk, members of which had severed themselves from the different bands of Indians occupying that country, and had become, in legal contemplation, an entity known to the law as a band.
• For a period of nearly three years these Indians terrorized the people of that part of the Territory by warlike and hostile demonstrations — so much so that the settlements became a desolation, and the people by organized association and the *288 authorities of the Territory by its militia became and were military belligerents against the Indians. It is true that no engagement ever took place between Black Hawk’s band and the military forces of the United States, and the condition existing between the people of Utah forming a part of the people of the United States made the hostility of the Indians as to those people a hostility against the United States and prevented the prevalence of that condition upon which the liability of the United States is founded.
For reasons not material to know, the United States failed to protect the people of the Territory of Utah, and said to them through their proper officer that they must rely upon their own resources as a people for military protection against the hostility of the Indians.
It is insisted by counsel for the claimant that the purpose and object of the organization known as Black Hawk’s band was theft and robbery and not a hostility to the citizens of Utah; that plunder and robbery was the paramount purpose, and that whatever violence was incident to their depredations was for the purpose of protection merely and to insure success in the execution of their predatory purpose. The condition incident to the raids of Black Hawk’s band, extending from the spring of 1865 to the autumn of 1867, was to inspire in the minds of the people and inhabitants of that country the most grave apprehensions for not only their property, but their homes and their lives. The findings of fact show that their depredations were numerous and extensive; and as incident to the execution of their purpose, whether of plunder or of hostility to the people, their act was fraught with most serious consequences not only to the property which they stole, but to the property upon which they trespassed and the lives of the citizens which were taken in the manj'' raids in which they engaged. That between this band and the inhabitants of that country there, should exist in legal contemplation a spirit of peace, friendship, and amity is most ridiculous to assume.
The Supreme Court, .in defining the word “amity” as used in the statute, has not confined its definition to a condition of war. It is said the word “amity ” is not a technical term. It is a word of common use, and such words when found in a statute must be given their ordinary meaning unless there be *289 something in the context which compels a narrower or different scope.
Webster defines it “friendship, in a general sense, between individuals, societies, or nations; harmony; good understanding; as, a treaty of amity and commerce.” The last part of this definition shows that the phrase “in amity” is not the equivalent of “under treaty.” A “treaty” implies political relations; ‘! amity ” signifies friendship, actual peace. (Marks v. The United States, 161 U. S., 297.)
That there was a condition of peace between the inhabitants of that portion of Utah and the Indians involved in this controversy is most absurd, considered in the light of what was the current apprehension — strife., bloodshed, and history. There was a state of suspended amicable relations between the Indians on one side and the white people on the other, and it was strife, pursuit, plunder, and death when they came in contact from the time of the commencement of the troubles until the surrender of Black Hawk .in the fall of 1867. If there was peace and amity, it contradicts the popular impression of the condition and makes silly and foolish every fear and apprehension which was indulged in by individuals and the public.
The refinement is too much refined to say that because the paramount purpose was plunder and gain that, notwithstanding violence, murder, and bloodshed, amity, peace, and friendship still prevailed.
The contention of the claimant involving the theory that because the object of Black Hawk’s band may have been robbery and theft that therefore a condition of nonamity could not arise is founded upon what is said by the Supreme Court in the case of Montoya v. The United States (180 U. S., 261), on appeal from this court, in which it is said “ whether a collection of marauders shall be treated as a band whose depredations are not covered by the act may depend, not so much upon the numbers of those engaged in the raid as upon the fact whether their depredations are part of a hostile demonstration against the Government or settlers in general or are for the purpose of individual plunder. If their hostile acts are depredations against all settlers with whom they come in contact, it is evidence of an act of war.
*290 If the responsibility of Black Hawk’s band is to be determined by the application of the doctrine enunciated in the last sentence above quoted, can there be any reasonable question as to what its legal condition was upon the question of amity?
The hands of these individual Indians were raised against everybody living in that part of Utah, and the entire force of the community in detail and in its aggregate capacity was called out by the public authorities to resist the encroachments of the marauders. So it may be said with complete justification that their hostile acts, incident, it may be, to the purposes of theft and robbery, were directed against “all settlers with whom they came in contact,” there being no portion of .the community with which they were in a state of friendship, and no period of that time during the history of their depredations when they ceased to be hostile in purposes and disposition against every white man inhabiting the territory over which they roamed.
By reference to the findings in this case it will be seen that a most deplorable condition of want of amity existed, and the court is constrained by force of the evidence in the case to hold, as they did in the Herring case, that the court, because of the want of amity, is without jurisdiction, and the petition is therefore dismissed.